CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 17 2014

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

VICTORIA DAVIES, as Administrator of )
the Estate of Lamrana Kamara, Deceased, )
     Plaintiff, )
)
v. )
)
VIRGINIA CVS PHARMACY, LLC, )
et al., )
     Defendants. )
_____ )

Case No. 7:14-cv-00175

**MEMORANDUM OPINION**

Hon. Glen E. Conrad
Chief United States District Judge

Defendants Virginia CVS Pharmacy, LLC ("CVS") and OneBeacon America Insurance

("OneBeacon") previously filed motions to dismiss plaintiff's complaint, which were argued at a

September 2, 2014 hearing. After that hearing, the court granted plaintiff's motion to amend and

allowed plaintiff to file an amended complaint. The court also gave each defendant additional

time to either file a responsive pleading, file an amended motion to dismiss, or to inform the

court that it wished to renew its prior motion to dismiss. Both defendants have now responded.

CVS has simply re-urged its original motion to dismiss, Dkt. No. 22, noting that the

amended complaint did not change the allegations against it. Dkt. No. 51. OneBeacon has filed a

separate motion to dismiss the amended complaint. Dkt. No. 52. For the reasons set forth herein,

both motions to dismiss will be granted.

### Factual and Procedural Background

This matter was originally filed in the Circuit Court for the City of Roanoke. Invoking

this court's diversity jurisdiction, CVS removed the action to this court. See Dkt. No. 1, Notice

of Removal at ¶¶ 3-5. OneBeacon joined in and consented to the removal. Id. at ¶ 2; Dkt. No. 13.

Accepting the well-pled facts in the amended complaint as true, as this court must when

ruling on a motion to dismiss, see Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008), the

facts are as follows:

Plaintiff Victoria Davies is the administrator of the estate of Lamrana Kamara. Kamara was involved in a car accident on or about November 28, 2012 that caused him to suffer injuries, including a broken leg. Dkt. No. 49, at ¶¶ 2, 5. The amended complaint further alleges that, at the time of the accident, Kamara was working within the scope of his employment and that "his employer provided workers compensation coverage through One[B]eacon and/or OneBeacon provided direct insurance coverage for" him. Id. at ¶¶ 10, 11.

After the accident, Kamara was admitted to Carilion Roanoke Memorial Hospital, where he underwent surgeries and received other medical treatment. His medical providers determined he would need anticoagulation treatment in order to prevent further injury, and he was prescribed Lovenox and Coumadin upon his discharge. The hospital's pharmacy was unable to provide the prescriptions, so arrangements were made to locate a pharmacy that could provide them. The amended complaint alleges, "upon information and belief," that the hospital would not have discharged Kamara if it were not certain that he would receive the prescriptions promptly. Id. at ¶¶ 6-8.

A CVS employee told Davies that CVS had the medicines available and would provide them. When Davies arrived at the pharmacy, however, she was informed that there was a problem with the medications being approved for payment, and that they would be available after a short time. Id. at ¶ 9. Although Davies was able to obtain other discharge prescriptions from CVS, the amended complaint alleges that CVS refused to fill the anticoagulation prescriptions, and that defendant OneBeacon (who issued a medical reimbursement policy allegedly covering Kamara) refused to pay for them. Kamara never received the anticoagulation prescriptions and "subsequently died from complications due to not taking those medications,

2

several days later." Dkt. No. 49 at ¶ 14.

The amended complaint alleges that "as a direct and proximate result of Kamara's injuries and death, the statutory beneficiaries have been caused to suffer and incur" various damages. These include "sorrow, grief, mental anguish and suffering, and the loss of solace, including society, companionship, comfort guidance, kindly offices, and advice of Lamrana Kamara," as well as the loss of his income and services, and expenses for his care, treatment, hospitalization and funeral services. Id. at ¶ 15.

The amended complaint asserts only two counts. Count one alleges negligent performance of an assumed duty against both defendants. Count two alleges that a special relationship existed between OneBeacon and Kamara because OneBeacon was "his insurer and/or workers compensation carrier" and because OneBeacon had begun paying for his hospital treatment and prescription medications and thus had a duty to cause treatment to be provided for him, "as in all insurance and/or workers compensation cases, when the medical treatment is provided through doctors and pharmacies selected by the insurance carrier." Id. at ¶¶ 18-20. It further alleges that OneBeacon negligently failed to authorize payment for the anticoagulation medication and failed to cause the medication to be provided both on the date of discharge and several days thereafter, proximately causing Kamara's death. Thus, both of the counts assert negligence claims, and do not allege the breach of any contractual duty.[1]

## Standard of Review

To survive a motion to dismiss, plaintiff's allegations must "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). This

---

[1] The original complaint contained a third count, which was a breach of contract claim, but that count was omitted from the amended complaint. Plaintiff's counsel clarified at a November 7, 2014 hearing that the amended complaint was intended to supersede the original complaint and that count three—the breach of contract claim—was purposefully omitted.

3

standard "requires the plaintiff to articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief, i.e., the 'plausibility of entitlement to relief.'" Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 678). The plausibility standard requires more than "a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## Discussion

### Choice of Law

When, as in this case, a federal court's jurisdiction is based on diversity, it must apply the forum state's substantive law, including its choice of law rules. Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). For tort claims, Virginia applies the rule of lex loci delicti, Jones v. R.S. Jones & Assocs., Inc., 431 S.E.2d 33, 34 (Va. 1993), which directs that the court apply the law of the state where the last event necessary to make an actor liable takes place. Quillen v. Int'l Playtex, Inc., 789 F.2d 1041, 1044 (4th Cir. 1986). In a negligence action, the last event is the alleged injury to the plaintiff, which occurred in this case in Virginia. See Santana, Inc. v. Levi Strauss & Co., 674 F.2d 269, 272 (4th Cir. 1982). Accordingly—and as both the parties agree is proper—the court applies Virginia's substantive law to plaintiff's claims.

### CVS's Motion to Dismiss

In its motion to dismiss, CVS argues that it is entitled to dismissal of count one—the sole count against it—on several grounds. Primarily, CVS contends that boiled down to its essence, plaintiff's claim is that CVS should be held responsible for Kamara's death because it did not give Davies the medications she wanted even though she did not pay for them. Dkt. No. 23 at 2. It argues that there is "no duty on the part of a retail store to give customers things for free" and

4

that it "certainly would have sold the medication to Davies if she had paid for it." Id.

Relatedly, CVS argues that because plaintiff's claim against CVS sounds in negligence, it requires that the defendant owe plaintiff a duty and then breach that duty. CVS contends that it did not have a duty to provide medication unless it was paid for, and the amended complaint establishes it was not. CVS cites to a number of cases that discuss the duties of care owed by a pharmacy, which are to fill prescriptions correctly and to dispense the correct medication. Dkt. No. 23 at 4. It contends that because plaintiff's claim depends on a duty that does not exist as a matter of law, her claim against CVS must be dismissed.

Plaintiff contends, however, that CVS negligently performed an "assumed duty." This theory posits that where a defendant assumes to act, even though gratuitously, he may become subject to the duty to act carefully, if he acts at all. Burns v. Gagnon, 727 S.E.2d 634, 643 (Va. 2012). For this theory to apply, an affirmative act by the defendant is required. See id. Plaintiff argues that the theory is applicable as against CVS because it assumed a duty to act when its employee told Davies, or told Carilion, that CVS would provide the anticoagulation medicine. This action, according to plaintiff, induced Carilion to discharge Kamara and allowed him to leave the hospital, and thus renders CVS responsible for the consequences. When CVS refused to fill the prescriptions because no one would pay for them, as the theory goes, CVS breached the assumed duty. See Dkt. No. 24 at 6; Dkt. No. 49 at ¶ 9 (alleging CVS told Davies they would provide the prescription).

The court concludes that, on the facts as alleged, plaintiff has not stated a plausible claim that CVS assumed a duty to act. Notably, CVS did not undertake to act gratuitously and the amended complaint does not allege that it did. That is, nowhere in the complaint does it allege that CVS told the plaintiff—or anyone—that it would provide the medication for free, and it was

5

under no legal obligation to do so. See Stormans, Inc. v. Selecky, 586 F.3d 1109, 1135 (9th Cir. 2009) (in context of addressing constitutional challenge to state law that required pharmacies to deliver lawfully prescribed FDA-approved medications with limited exceptions, stating "[n]obody could seriously question a refusal to fill a prescription because the customer did not pay for it"); cf. Astrop v. Eckerd Corp., 2010 WL 1779992, at *4 (E.D. Va. April 29, 2010) (dismissing with prejudice a claim against a drug store where the plaintiff alleged that the pharmacy failed to have his medications in stock when he wanted them).

Although plaintiff has cited to a number of cases concerning "assumed duties," plaintiff has not cited to any case holding—or suggesting—that, by telling a potential customer it would provide medication to the customer, a pharmacy assumes a legal duty to provide that medication free of charge and without anyone paying for it. Instead, a retail pharmacy like CVS understandably requires payment for medications it dispenses. Cf. Stormans, Inc., 586 F.3d at 1135. Because the court concludes that the facts here do not plausibly allege that CVS assumed any duty to plaintiff or Kamara, plaintiff's claim of negligence fails as a matter of law. Accordingly, the court will grant CVS's motion to dismiss.

**OneBeacon's Motion to Dismiss**

As noted, the amended complaint asserts two claims against OneBeacon, both of which are negligence claims. The first asserts that OneBeacon assumed a duty to pay for Kamara's medications when it began paying for some of his medical treatment as a result of the accident. The second seeks to impose a duty on OneBeacon by virtue of its "special relationship" to Kamara. In its motion to dismiss, OneBeacon argues that the amended complaint alleges only that OneBeacon breached its financial obligation to pay for, or authorize payment for, the medications. Thus, it claims that it did not owe any common law duty to Kamara or his survivors and that its sole duties are governed by the contract and not by any "assumed duty" or "special

6

relationship." In short, it contends that the only claims against it sound in contract, not tort, and thus both counts alleging negligence should be dismissed.[2] Stated differently, OneBeacon's primary argument is that a duty owed to another party that arises solely from a contractual obligation is not actionable in tort. Dkt. No. 15 at 5 (citing Richmond Metro. Auth. v. McDevitt St. Bovis, Inc., 507 S.E.2d 344, 346-47 (Va. 1998)).

Plaintiff counters with several arguments. She claims that there is no Virginia case that addresses the issue of an assumed duty or "special relationship" in the context of an insurer-insured relationship, but argues that a "special relationship" can arise under what was initially a contractual relationship and that tort liability can attach even in that context. She points, in particular, to the amended complaint's allegations that OneBeacon had previously paid or promised to pay for Kamara's related treatment, that "Carilion would not have discharged Kamara if they were not certain he would have receive[d] the aforesaid [anticoagulant] prescriptions promptly," and that "CVS relied in part upon the actions and assurances of One[B]eacon's employees . . . when agreeing to provide" the prescriptions. Dkt. No. 17 at 5. Based on these facts, plaintiff alleges OneBeacon knew Kamara faced imminent harm when it chose to deny or withhold payment.

The court has carefully considered the arguments of the parties, but concludes that both of plaintiff's negligence claims fail as a matter of law. In short, Virginia law as applied here would not allow a separate tort claim against OneBeacon, because the only duty allegedly breached is the same duty imposed by OneBeacon's contract, i.e., the duty to pay for certain

---

[2] Although the amended complaint is somewhat vague on the nature of the contractual obligation, OneBeacon notes that the policy referenced in the amended complaint is not a worker's compensation policy. Instead, it is a "reimbursement" policy that provides specified benefits to an Insured Person who sustains an injury during the course of his or her work. In particular, OneBeacon agrees to pay for prescription medicines or drugs "within 30 days upon the Company's receipt of due and satisfactory written proof of the loss." Policy at 15, 19.

7

covered medical treatment. The court finds no merit in plaintiff's assertion that there was an

"assumed duty" or "special relationship" creating tort liability.

The case of <u>Augusta Mut. Ins. Co. v. Mason, Jr.</u>, 645 S.E.2d 290 (Va. 2007), states well

the general principles under Virginia law and their application:

> At the outset, we acknowledge that a single act or occurrence can,
> in certain circumstances, support causes of action both for breach
> of contract and for breach of a duty arising in tort. <u>Foreign Mission
> Bd. v. Wade</u>, 242 Va. 234, 241, 409 S.E.2d 144, 148 (1991) (citing
> <u>Kamlar Corp. v. Haley</u>, 224 Va. 699, 705, 299 S.E.2d 514, 517
> (1983)). To avoid turning every breach of contract into a tort,
> however, we have enunciated the rule that, in order to recover in
> tort, "the duty tortiously or negligently breached must be a
> common law duty, not one existing between the parties solely by
> virtue of the contract." <u>Id.</u> (citing <u>Spence v. Norfolk & W. R.R.
> Co.</u>, 92 Va. 102, 116, 22 S.E. 815, 818 (1895)).

645 S.E.2d at 293. The <u>Augusta Mut. Ins. Co.</u> decision also discusses at length <u>Richmond Metro.

Auth.</u>, 507 S.E.2d 344,—the primary case cited by OneBeacon—explaining that "the

determination whether a cause of action sounds in contract or tort depends on the source of the

duty violated." <u>Id.</u> (citing <u>Richmond Metro. Auth.</u>, 507 S.E.2d at 347).

As applied in the <u>Richmond Metro. Auth.</u> case, the tort claims were properly dismissed

because the defendant's misrepresentations in that case "only breached duties assumed by

contract and . . . nothing demonstrated the breach of any duty that was separate and independent

from the contract." <u>Id.</u> (citing <u>Richmond Metro. Auth.</u> 507 S.E.2d at 346). As further recited by

the <u>Augusta Mut. Ins. Co.</u> Court, "[i]f the cause of complaint be for an act of omission or non-

feasance which, without proof of a contract to do what was left undone, would not give rise to

any cause of action (because no duty apart from contract to do what is complained of exists) then

the action is founded upon contract, and not upon tort." 645 S.E.2d at 295.

That is precisely the situation here. The obligation to pay for medical treatment, if it

exists at all, arises only because of the contract (the reimbursement policy). There is simply no common law duty imposed on OneBeacon to pay for medical treatment provided to Kamara. Paying some of what is owed under its contract does not give rise to an <u>assumed duty</u> to pay for reimbursement for all expenses claimed by Kamara. The common law does not impose such a duty and plaintiff does not cite to any case so holding. To the extent the damages sought herein can be asserted against OneBeacon at all, then, they can be obtained only through a breach of contract claim, not through a theory of negligence based on an assumed duty.[3] <u>Cf.</u> <u>id.</u>; <u>see also</u> <u>Tuel v. Hertz Equip. Rental Corp.</u>, 508 F. App'x 212, 219-20 (4th Cir. 2013) (per curiam) (surveying Virginia law concerning assumption of duty, and concluding that "Virginia courts appear to be most receptive to finding a party assumed a duty in tort during the performance of a contract where the injured party (1) was a foreseeable third party, not in privity to the contract; and (2) suffered some physical injury, rather than mere economic loss, as a result of the actor's negligent performance"); <u>Jeannie's Jewelers, Inc. v. ADT Sec. Services, Inc.</u>, 2012 WL 1869319 (E.D. Va. May 22, 2012) (dismissing negligence claim by owner of burglarized jewelry store premised on defendant's failure to provide a functioning alarm system where the "obligation to install a security system arose solely by way of contract" and "there is no common law duty to provide alarm services"); <u>Bosworth v. Vornado Realty L.P.</u>, 83 Va. Cir. 549, 2010 WL 8925838, at *8 (Va. Cir. Ct. Dec. 20, 2010) (declining to find defendant "assumed duty" to provide security measures at mall where it already had a contractual obligation to do so, and noting that the "assumption of duty" cases are a "narrow set" of cases under Virginia law).

---

[3] While plaintiff initially asserted a breach of contract claim against OneBeacon, its amended complaint does not contain such a claim. See supra note 1. Accordingly, the court need not determine whether any of the damages sought by plaintiff in her amended complaint would be recoverable in a contract claim as consequential damages. See, e.g., Richmond Med. Supply Co. v. Clifton, 369 S.E.2d 407, 409 (Va. 1988) (discussing "two broad categories" of damages in contract, direct and consequential damages).

Similarly, the argument that a "special relationship" exists giving rise to a duty by One Beacon in the context of this case is not supported by Virginia law. For example, in Holles v. Sunrise Terrace, Inc., 509 S.E.2d 494 (Va. 1999), the Supreme Court of Virginia affirmed the trial court's ruling setting aside a jury verdict in plaintiff's favor on a negligence claim. There, the plaintiff's decedent lived in a senior residential center, and she was raped and robbed at her apartment after an intruder gained access to the front of her apartment through an otherwise-locked door as another individual left the premises. The defendant provided food and management services to the center pursuant to a contract with the County, and its contract included certain obligations related to security. The jury awarded damages on the negligence count, but the trial court set aside that verdict. It concluded that the management company was neither the owner of the property nor the decedent's landlord and thus had no special relationship with the decedent nor any common law duty to protect her from the foreseeable criminal acts of third parties. 509 S.E.2d at 497-98.

In affirming this ruling, Supreme Court of Virginia stated: "To establish a cause of action for negligence, the duty alleged to have been tortiously breached must be a common law duty, not a duty arising between the parties solely by virtue of a contract." Id. at 497. It rejected any claim that a special relationship existed between the resident and the defendant "because there was no right of protection inherent in their relationship separate and apart from any duties imposed by Sunrise's contract with the County." Id. at 498. Thus, the negligence claim was properly dismissed. Id.

The cases relied upon by plaintiff do not support his arguments regarding a "special relationship," as applied here. As an initial matter, most of them involve the question of whether the defendant had the duty to either warn or protect the plaintiff from the intentional torts or

10

criminal acts of a third party. In that context, the general rule is that a special relationship giving rise to such a duty may be found when the defendant knew of an "imminent probability of harm" to the plaintiff. See Yuzefovsky v. St. John's Wood Apts., 540 S.E.2d 134, 140-41 (Va. 2001). In Yuzefovsky, for example, the court assumed, but did not decide, that the plaintiff could establish a special relationship between the landlord and a tenant, but nonetheless held that the landlord had no duty to warn and/or protect the tenant against the danger of harm from the criminal conduct of a third party. Similarly, in A.H. v. Rockingham Pub., 495 S.E.2d 482, 486 (Va. 1998), the Supreme Court of Virginia affirmed the trial court's determination that a newspaper had no duty to warn one of its carriers of the danger of an attack by a third party.

Thompson v. Skate Am., 540 S.E.2d 123 (Va. 2001), which also involved criminal conduct by a third party, is illustrative as to when such a "special relationship" has been sufficiently alleged. In Thompson, the Court held that the complaint sufficiently alleged that the owner of a skate rink had a duty to protect one of its invitees, who was injured by a third person's criminal assault. In that case, the complaint alleged that the attacker had "caused disturbances, arguments and fights" at the skate rink on "several prior occasions," that he was "a known trouble maker" who had previously been ejected from the rink by its employees, and that he "had been banned from reentry to the rink on the date of the attack." Id. at 125. In light of those specific facts regarding that particular assailant, the court concluded that a claim based on a "special relationship" could survive dismissal. The facts in Thompson are a far cry from the instant case, which allege that OneBeacon was requested to provide payment for a prescription medication per the terms of its contract, represented it would do so, and then refused to pay for it. Cf. Didato v. Strehler, 554 S.E.2d 42, 49 (Va. 2001) (describing Thompson, A.H., and other cases as falling "within the ambit of our jurisprudence governing special relationships . . .

11

because those relationships give rise to a duty of protection from criminal acts committed by third parties" and concluding they "have no application" to the issue of whether parents of a patient were owed a duty to warn by medical providers who allegedly failed to advise them of the correct results of their daughter's sickle cell test).

Plaintiff acknowledges that Virginia courts have not considered this theory "in the context of insurer-insured," Dkt. No. 17 at 8, but nonetheless argues that OneBeacon should have been aware of imminent danger to Kamara when it received the requests to fill the anticoagulation medication and that this fact could give rise to the requisite special relationship. The court disagrees. In particular, the United States Court of Appeals for the Fourth Circuit has expressly held that, under Virginia law, there can be no recovery in tort for a refusal in bad faith to honor a first-party insurance claim. See A & E Supply Co. v. Nationwide Mut. Fire Ins. Co., 798 F.2d 669, 676 (4th Cir. 1986). In that case, the defendant insurance company had refused to pay a fire loss on the ground that the fire had been set by the insured. The insured sued, contending that its claim had been denied in bad faith, and it sought and was awarded punitive damages by a jury. On appeal, the Fourth Circuit ruled that claims for a failure to pay an insured directly are evaluated under contract principles, not tort principles, and thus no punitive damages could be awarded. See id. Subsequent decisions from this court and others have recently affirmed that principle. See, e.g., Moorehead v. State Farm Fire & Cas. Co., 123 F. Supp. 2d 1004, 1005-1006 (W.D. Va. 2000).

The court is constrained to conclude that A & E Supply Co. and the other authorities highlighted above compel the conclusion that OneBeacon owed no duty to Kamara outside of its contractual duties. But for the contract or policy, there would be no duty and no obligation on the part of OneBeacon to pay for Kamara's medicines. The mere fact that OneBeacon stated it would

12

abide by its contractual duties to Kamara and then failed to do so does not render it liable in tort.

## Conclusion

For the foregoing reasons, the defendants' respective motions to dismiss will be granted. The clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER this 17th day of November, 2014.

_____
Chief United States District Judge

13